SUSAN R. TREMAIN, NOW KNOWN AS SUSAN R. TALLANT, APPELLEE, V. CHARLES L. TREMAIN II, APPELLANT.
646 N.W.2d 661

Filed July 12, 2002.   No. S-01-790.

Gregory D. Barton, of Harding, Shultz & Downs, for appellant, and, on brief, Charles L. Tremain II, pro se.

Louie M. Ligouri, of Ligouri Law Office, for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Charles L. Tremain II appeals from an order of the district court for Johnson County that denied his request to remove his children from the state and granted custody of the children to his ex-wife, Susan R. Tremain, now known as Susan R. Tallant.

## SCOPE OF REVIEW

■ Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination

will normally be affirmed absent an abuse of discretion. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002).

■ Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Id.*

## FACTS

Charles and Susan were married in Nevada on February 16, 1992, and they have three children. A decree dissolving their marriage was entered on December 10, 1999.

In the dissolution decree, the district court awarded custody of the children to Charles, subject to a visitation schedule that included every other weekend, scheduled holidays, and 4 weeks in the summer. Both parties were restrained from removing the children from the state without the court's consent unless the other party gave written consent for a temporary removal. Based on her current income, Susan was directed to pay $50 per month in child support. Charles was directed to maintain health insurance for the children, with other medical expenses to be shared by Charles and Susan.

Susan appealed the custody determination to the Nebraska Court of Appeals, which affirmed the district court's order. See *Tremain v. Tremain*, No. A-00-067, 2000 WL 1673320 (Neb. App. Nov. 7, 2000) (not designated for permanent publication). The Court of Appeals found, upon its de novo review, that both Susan and Charles are fit parents, that the children have good relationships with both parties, and that each party can provide a suitable home for the children. The appellate court held that it could not find an abuse of discretion in awarding custody to Charles.

Following the divorce, Charles moved to Clay Center, Nebraska, where he earned $35,000 per year as a teacher and assistant coach for the Harvard public schools. Charles said he resigned the position in the spring of 2000 because he had philosophical differences with the principal and had been told his contract would not be renewed. He applied for more than 40 teaching positions but received no similar offers. He eventually took a job with a counseling center in the Hastings, Nebraska, area at a salary of $24,000 per year.

Charles married Jacque Jury on June 25, 2000. At the time of the marriage, she lived in Forest Grove, Oregon, and worked as a financial officer earning $83,000 per year. After the marriage, Jacque continued living and working in Oregon, while Charles and the children lived in Clay Center. The children attended Clay Center public schools in the fall of 2000.

In November 2000, Charles was offered a teaching position in Oregon that paid $43,500 per year. He did not tell Susan about the position. After Susan gave Charles permission to take the children to Oregon for an extended Thanksgiving holiday, he moved the children to Oregon and enrolled them in school.

In December 2000, Charles filed an application for permission to remove the children from Nebraska in which he explained that he originally sought teaching positions that would begin in January 2001. However, an Oregon school wanted him to report on November 21, 2000, and begin teaching in the first week of December. Susan filed an answer and cross-petition on January 16, 2001, in which she alleged that Charles was in contempt of court for removing the children from the state. She asked the district court to enter an order awarding her custody of the children. The court found Charles in contempt and directed him to return the children to Nebraska on or before January 15.

Charles terminated his teaching position in Oregon and returned with the children to Burchard, Nebraska, where he was able to obtain free housing from one of Jacque's relatives. He took temporary positions as a substitute teacher earning $60 per day.

After a hearing in March 2001, the district court temporarily placed the children in Susan's custody, and she enrolled the children in the Lewiston school district. Charles returned to Oregon and worked as a substitute teacher for $130 per day.

At the time of the hearing in May 2001, Charles had two interviews pending for teaching positions with starting base salaries of $47,500. Charles and Jacque were renting a five-bedroom home in Oregon. Jacque's 30-year-old daughter and a grandson also resided in the home. Jacque had been laid off when her employer downsized, but she eventually obtained a job in a real estate office in Seattle, Washington. The job was 3 hours away from Forest Grove, Oregon.

Susan married Michael Tallant in the summer of 2000. In May 2001, they were living in Liberty, Nebraska, in a two-story home with five bedrooms. Michael worked in Beatrice and earned a modest income. Susan was working as a painter and decorator. The district court found that her potential earning capacity was a minimum of $12,000 per year.

On June 11, 2001, the district court denied Charles' application to remove the children from the state and granted Susan's cross-petition for change of custody. The order included a visitation schedule that made provision for Charles' residing in either Oregon or Nebraska. Charles was ordered to pay Susan child support of $967 per month with a decreasing schedule as each child reaches the age of majority. Charles appeals.

## ASSIGNMENTS OF ERROR

Charles asserts that the district court abused its discretion in placing the children in the temporary custody of Susan in March 2001, in granting permanent custody to Susan, in denying Charles permission to remove the children from Nebraska, and in basing its decision in substantial part on the court's opinion that women generally are natural nurturers. Charles also asserts that the court's finding of a material change in circumstances which justified transferring child custody is contrary to the law and the evidence.

## ANALYSIS

The district court denied Charles' request to move the children to Oregon, finding that it was in the best interests of the children to award custody to Susan. This change of custody occurred just 18 months after the dissolution decree was entered by a different judge.

In order to prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). The district court found that Charles had not voluntarily given up his $35,000-per-year job in Harvard and that he was having trouble obtaining a similar job in Nebraska. The job he had taken in Oregon had a potential for increased salary compared to similar jobs in Nebraska. At the time of the hearing on Charles' request

to move the children, Charles no longer had a job in Oregon because he lost his teaching job when he was ordered to return to Nebraska. Jacque had not been able to find employment in Nebraska. The court found that although there was no evidence of a firm job offer, the evidence of present job interviews in Oregon, Charles' previous ability to obtain a job, and his marriage to Jacque met Charles' burden of showing a legitimate reason to leave Nebraska because Oregon offered Charles increased opportunities for enhanced income as a teacher.

After the custodial parent satisfies the court that he or she has a legitimate reason for leaving the state, the custodial parent must demonstrate that it is in the child's best interests to continue living with him or her. See *id*. In order to determine whether it is in the children's best interests to continue living with Charles, the district court considered the factors spelled out in *Vogel*: (1) each parent's motives for seeking or opposing the move; (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent; and (3) the impact such a move will have on contact between the child and the noncustodial parent, when viewed in the light of reasonable visitation arrangements.

The district court found that neither party was seeking to frustrate the custodial rights of the other or acting in bad faith and that both parents cared about the children and were trying to do what was best, "even though it is apparent to me that these two people are not nice to each other." The court determined that each parent had valid reasons for their respective positions concerning removal of the children from the state.

The district court considered the potential that a move would enhance the quality of life for the children and Charles. The court weighed the factors set forth in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), and concluded that Charles should not be allowed to move the children.

The district court also considered the impact the move would have on the children and Susan. Charles' testimony established that he was willing to allow extensive visitation during summer and school holidays and was willing to pay some of the expenses. The court found that Susan "is the type of parent that wants to be a major part of the children's lives." This fact weighed against relocation.

The district court found that Charles had not demonstrated that it is in the children's best interests to continue to live with Charles. The court said that the only factor that weighed in favor of relocation was the expectation of enhanced income and that it had not been shown by a preponderance of the evidence that it would be in the children's best interests to relocate.

From our de novo review, we conclude that it is not in the children's best interests to move to Oregon. The only factor which weighs in Charles' favor is the possibility of enhanced income, and this factor is not sufficient to carry the burden to establish that it is in the children's best interests to be moved to Oregon. We therefore affirm that portion of the district court's order denying Charles' request to move the children.

■ We next address whether there was a material change in circumstances that would justify a change in custody. We consider this issue separate and apart from the request to move the children to Oregon. Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Id.* This court conducts a de novo review on the record in child custody determinations. See *id.*

■ The party seeking modification of child custody bears the burden of showing a change in circumstances. *Id.* A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Sullivan v. Sullivan*, 249 Neb. 573, 544 N.W.2d 354 (1996). In *Vogel*, we stated that the removal of a child from the state, without more, does not amount to a change in circumstances warranting a change of custody. We recognized that a move, considered in conjunction with other evidence, may result in a change in circumstances that would warrant a modification of the decree. In this case, the request to move the children also resulted in a change in custody of the children.

■ The district court found a material change in circumstances based in part on the "stability" of Charles. The court found that Charles' move to Oregon reflected instability, deceit, and poor judgment regarding the children's best interests. The question is whether the district court abused its discretion in finding a material change in circumstances based upon Charles' unilateral move to Oregon without the consent of Susan or the court. A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Vogel v. Vogel, supra.*

The district court stated that several questions were left unanswered, including whether Charles and Jacque would relocate to Nebraska if the court denied the request to remove the children. Susan's cross-petition alleged a material change in circumstances, which she claimed was the instability of the children's home and school based on Charles' employment decisions. The court found that while the stability issue alone did not demonstrate a material change in circumstances, a combination of events following the decree resulted in a material change in circumstances.

The district court based its decision, at least in part, on its finding that Susan, as a woman, is a better nurturer. That finding does not demonstrate a change in circumstances because Susan made the same claim during the dissolution proceedings, when she argued that she should be awarded custody because she is more nurturing than Charles. This claim was known to the court at the time of the dissolution decree and did not persuade the court to award custody to Susan at that time. Moreover, the record does not show that this circumstance has materially changed since the original decree granting custody to Charles.

The best interests of the children are this court's paramount concern. See *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996). The evidence was sufficient to support either parent as the custodial parent because both were found to be fit. In granting Susan's cross-petition for a change in custody, the district court apparently adopted her assertion that Charles had failed to provide stability for the children. The court found that Charles had moved the children to four separate school systems since the entry of the decree and that his job changes reflected

instability. However, Charles moved the children to Oregon because he had obtained a better job, and he quit that job and moved them back to Nebraska in response to the court's order. The children were temporarily placed in Susan's custody in March 2001 and apparently have remained there.

Although we have concluded that it is in the best interests of the children to remain in Nebraska, we are not persuaded that Susan has sustained her burden of showing a material change in circumstances that would justify a change in custody. The district court noted that "this was never a question of whether or not [Charles] was a fit parent or not." The court stated:

> It was a question of whether or not he opened the door on change of custody because he moved out of Nebraska. He would have never had custody taken out of his possession if it wasn't for the fact he wanted to create this material change of circumstances and take the kids out. The mere fact he's asking to transfer them, I think that's a material change, the custody issue being b[r]ought back into the forum.

The district court abused its discretion when it determined there had been a material change in circumstances that justified granting a change in custody. The court should have ascertained whether Charles would relocate to Nebraska in order to retain custody of the children. The issue was not resolved, and the evidence does not support a finding of a material change in circumstances.

## CONCLUSION

That portion of the district court's order denying Charles' request to remove the children from Nebraska was not an abuse of discretion, and it is affirmed. However, that portion of the order granting custody to Susan based on a material change in circumstances is reversed, and the cause is remanded for further proceedings to determine the custody, support, and visitation arrangements should Charles choose to reside in Nebraska.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

HENDRY, C.J., not participating.